1820.

DUMOND
v.
MAGEE.

C. DUMOND, *surviving Administrator of* A. DUMOND, *against* MAGEE and others.

A Court of equity will lay hold of the property or money of a wife, which may be within its power, for the purpose of providing a maintenance for her, when she is abandoned by her husband, or prevented from cohabitation with him, by his ill-treatment.

Where a husband abandoned his wife, and married another woman, with whom he had continued to live for twenty years, he was held to have forfeited all just claim to the wife's distributive share to personal estate inherited by her. The Court directed the principal of such share to be brought into Court and placed at interest, and the interest to be paid to the wife, for her support, during life ; and after her death, the principal to go to her children, by her *lawful* husband, or to their representatives; (she having, after being so abandoned by her husband, upon report and belief of his death, married another.)

*Feb. 17th.*

THE bill, filed *August,* 1816, stated, that *Anthony Dumond* died, unmarried, and intestate, on the 3d of *November,* 1814, possessed of a considerable personal estate, &c. leaving a mother, *Catharine Dumond,* and two sisters of the half blood, *Maria* (the assumed wife of *Samuel Magee,* of *Catskill*) and *Catharine,* the wife of *Thomas Harrett,* residing in the state of *Ohio.* Administration was granted to the plaintiff, and to *Catharine,* the mother of the intestate, who died in *May,* 1816, having devised her share of her son's personal estate, to the plaintiff and others. (And this third the plaintiff was ready to distribute among the parties interested, and as to which there was no controversy.) The bill further stated, that *Samuel Magee,* defendant, claiming to be husband of *Maria,* defendant, had applied to the plaintiff, for one third of the personal estate of the intestate. That the plaintiff knew that the defendant, then *Maria Dumond,* married *John Burhanse,* defendant, by whom she had

three children, one of whom died without issue, and the other two were living. That the defendant, *John Burhanse,* who was living, had, by his trustee, *Jabez D. Hammond,* defendant, demanded of the plaintiff, the one third of the personal estate, as lawful husband of the said *Maria.* That the defendant *Magee* pretended to have married the defendant *Maria,* in 1799, and she has cohabited with him since. That the defendant, *John B.,* has always lived in this state, and was deserted by the said *Maria,* in 1792, and that the marriage between the defendants *Magee* and *Maria,* was unlawful. That the defendant *Magee,* set up a release of all the right and interest of *J. B.,* but that *J. B.,* and his trustee, *Hammond,* averred, that the assignment to *Hammond,* in trust, is prior in time, and that the assignment to *Magee* was procured by duress and fraud. That *T. Harrett,* who married *Catharine Dumond,* resides in *Ohio,* and they have two children ; that their son, by virtue of a power of attorney from his mother, claimed her share. That the plaintiff was lately cited before the surrogate of *Ulster* county, to account and distribute, at the instance of the defendants, *Magee* and *Maria,* and *A. Harrett,* as attorney of *Catharine H.* That the plaintiff cannot safely distribute, until the claims of *Magee* and *Maria,* and the other defendants, are decided; it being uncertain, also, from contradictory reports, whether *Thomas H.* was living. The plaintiff asked for the decision of the Court on these conflicting claims, and for its protection and indemnity. *Prayer,* that the surrogate of *Ulster* may be enjoined from proceeding, &c. and for general relief, and an order for distribution, as this Court shall decide and settle the rights of the parties claiming, &c.

The defendants, *Samuel Magee,* and *Maria,* in their answer, stated, that she was lawfully married to *John Burhanse,* at *Kingston,* in *Ulster* county, in 1781, and lived with him until 1786. That *Burhanse* then left his wife and her two children, destitute, and she was taken home to her father's

1820.

DUMOND
v.
MAGEE.

house. That they, afterwards, lived together for two years, at *Brooklyn*, but that he behaving in an adulterous and cruel manner towards her, she returned again to her father's house, with her two children. That she was, afterwards, persuaded to live with him in *Scoharie*, but he again neglected and abandoned her, and she again returned to her father's house, in 1792, which was their final separation. That several years, afterwards, and before her marriage with *Magee*, she was informed, and believed, that her husband *B.* was dead; and in 1799, she married the defendant, *Magee*, with whom she has since lived, with the two children, she had by *B.* That they never heard that *B.* was alive, until about five years ago. That about twenty years ago, (and before the marriage of the defendants, *Samuel Magee* and *Maria*,) *Burhanse* had married another wife, by whom he had a daughter, now seventeen years of age. These defendants then stated facts relative to the two deeds of assignment by *Burhanse* to *Magee*, and to *Hammond*, which, from the decision of the court, it is unnecessary to notice. The other defendants having answered, the cause was put at issue, and proofs taken. The material parts of the evidence are stated in the opinion of the Court.

*Sudam* for the plaintiff.

*M. I. Cantine*, for the defendants, *A. Harrett*, and *Magee* and wife.

*J. D. Hammond*, for the other defendants.

THE CHANCELLOR. This is a bill filed by the plaintiff, as administrator, for direction to whom to pay the two distributive shares of the personal estate of his intestate, which descended, by law, to the next of kin, being the defendants *Maria* and *Catharine*, the two sisters of the half blood.

There can be no doubt that the defendant, *Catharine Har-rett*, is entitled to her share, in her own right ; for it is very clear from the proofs, that her husband, *Thomas Harrett*, is dead, and was so when the share descended to her. The course of duty, on this point, was so plain, that there seems to have been no sufficient ground for delay, or for application to this Court. But the conflicting claims as to the other share, were of a nature to create reasonable doubt and diffi-culty.

I place entirely out of view all pretensions of the defend-ant *Magee*, as the assumed husband of *Maria Burhanse*, for her lawful husband, *John Burhanse*, being living, and she having never been divorced from him, her cohabitation with *Magee* is adulterous and unlawful. If he has any colour of claim to her distributive share, it is derived from the act and deed of her husband, *Burhanse*. But it appears, from the circumstances of the case, that *Burhanse* has no right or title which the Court can recognise and protect, and, conse-quently, he had none which he could impart to another. I am, therefore, relieved from the necessity of discussing and deciding on the force and effect of the two deeds executed by *Burhanse*, and to which a great part of the testimony is directed.

It is manifest that *Burhanse* behaved extremely ill to his wife before their final separation. The separation was ren-dered necessary on her part, by his omission to treat her with that kindness and fidelity, and to afford her that pro-tection and support, to which she was entitled. Though I am obliged to condemn her subsequent connection with *Magee*, as altogether inadmissible, her situation is one that entitles her to tenderness and compassion. She says, in her answer, that she did not marry *Magee*, until several years after her separation from *Burhanse*, and until she was in-formed, and believed, he was dead. It was her misfortune to have been deceived by such information ; and though it

may be sufficient to exempt her from guilt, it cannot give any validity to the second marriage, which was, and is, of course, null and void. The case affords too much colour for the inference, that the defendant *Maria* did not take proper pains, nor make due and requisite inquiry, to ascertain the fact of her husband's death, whom she had left residing in a neighbouring county. I am very apprehensive that she reposed with too willing a disposition, and in too careless a manner, upon some loose, and certainly groundless report, without that vigilance of examination which was required in a matter of such interesting moment to her character and conscience.

On the other hand, the conduct of *Burhanse* has been such as to deprive him, in equity, of all just claim to his wife's distributive share. The separation between him and his wife, was owing to his own misconduct; and he has married another woman, and lived in unlawful and adulterous connection with her, for the last eighteen or twenty years. To allow him to come in and maintain his claim, as husband, to the personal estate inherited by the defendant *Maria*, as late as 1814, after he has ceased to maintain her or her children, ever since their separation, in 1792, and has, for that long space of time, wholly abandoned his connection and duties, as husband and father, would shock the moral sense of mankind, and be equally repugnant to the established principles and practice of this Court. It is the settled doctrine, that equity will lay its hands on the property or money of the wife, which is within its power, for the purpose of providing a maintenance for her, when she is abandoned by her husband, or prevented from cohabitation by his ill-treatment.

In *Nicholls* v. *Danvers*, (2 *Vern.* 671.) the wife was ill-used by her husband, and she parted from him. The wife's mother died intestate, by which one third of the personal estate came to the wife. A bill was filed by her and her brother, to have that portion paid to her, for her use and

maintenance. The husband had, on the marriage, made a suitable settlement upon her, and by a cross bill, he claimed this distributive share. The Lord Keeper decreed that the principal should be paid to a master, and placed at interest, and the interest paid to her for life, for her maintenance, and after her death to her husband, for life, and then the principal to their issue, and if no issue, then to the survivor of husband and wife. The costs of all parties, except the husband, to be paid out of the fund, but no costs were allowed to the husband.

This case is, in some respects, analogous, but there was not such a total and permanent abandonment of the wife, by the husband, as to deprive him of all claim upon the property. He was, nevertheless, postponed to the wife, as to the use of it, and to her issue, as to the principal. In the case of *Williams* v. *Callow*, (2 *Vern.* 752.) the husband had used the wife cruelly, and the Court decreed that the interest of a trust bond given for the wife's portion, should be paid to her for her separate maintenance; and it ordered the principal to be brought into Court, and to be paid to the survivor. So again, in *Newsome* v. *Bowyer*, (3 *P. Wms.* 37.) the control of the wife's portion of personal property, which came to her by inheritance during coverture, was taken from the husband, whose crimes had forced him to abandon her, and was appropriated to the use of the wife. The case was this; the husband had been attainted of felony and pardoned, on condition of transportation, and the wife became entitled to some personal estate, as orphan to a *freeman* of *London*, and it was claimed by the husband as being, by the pardon, capable to take. Lord Ch. *King*, though he thought it not a case of abjuration or banishment, ordered the money to be laid out in government securities by a master, and the interest and dividends paid to the wife, for her maintenance, until further order; and after the husband's death, he ordered the principal to be paid to

the second husband of the wife, who, with the wife, had made application for it.

Here the doctrine is fully asserted and maintained, that the husband, by his abandonment of the wife, may lose all claim to the use and to the principal of her separate personal estate.

The case of *Cecil* v. *Juxon*, (1 *Atk.* 278.) contains the same principle. The husband left the wife and two infant children, and went abroad, and deserted them, for fourteen years. The wife was entrusted by her mother, with goods proper for the business of a milliner, and permitted to take the profits, for the support of herself and her children. The money she earned by her business, she loaned out. The husband returned and took away the proceeds of the stock lent to the wife; and a bill was filed against the husband for the amount of the money loaned, and for a re-delivery of the goods taken. Sir *Joseph Jekyll*, the Master of the Rolls, was of opinion, that as the desertion was proved, the Court would regard the acquisitions of the wife, in his absence, as her separate property, and not liable to the disposition of the husband, and that she was entitled to the goods taken, and to the money loaned; and he directed a reference, to ascertain what was due on the loan, and that the defendant should return the goods taken, or the value, if disposed of, without costs on either side. This case was cited in 3 *Burr.* 1779, and Lord *Mansfield* observed, that it was a case securing the wife's property, and that the wife's separate property had been secured, by a Court of Equity, in several cases.

I shall, accordingly, declare, that the two sisters of the half blood, *Maria* and *Catharine*, were each entitled to a third part of the personal estate of the intestate, and that *Catharine*, or her attorney and son, the defendant, *Anthony Harrett*, is entitled to her share, when ascertained, on giving the usual security to refund in case of debts. It may be a question whether the plaintiff ought not to pay interest and

costs to the defendant, *Catharine*, for so long withholding her share, upon pretences that were not solid; and I shall, therefore, direct the master to ascertain the amount of the two shares, and what use or disposition has been made of the property since it was payable and due from the plaintiff. I shall further declare that the defendant, *John Burhanse*, has forfeited all right and title, as husband of the defendant *Maria*, to her distributive share, and that the same ought to be brought into Court, and placed at interest, so that the interest may be paid to the said *Maria*, for her support, and the principal reserved for her children by *Burhanse*, after her death, on giving the like security to the plaintiff against debts of the intestate. It may, also, be a question whether the plaintiff ought not to have costs out of *Maria's* portion, by reason of the resort to this Court, to settle the various and conflicting claims upon that portion; but the defendants, *Magee* and *Burhanse*, are not entitled to costs for setting up and urging an inadmissible claim. Nor, on the other hand, has the plaintiff any such equity against them as to entitle him to costs from them. The most I can do is to dismiss the bill, as to them, without costs. Whether the defendant, *Hammond*, who defends the suit as a trustee for *Burhanse*, and to whom, as such trustee, the plaintiff, by his agreement of *November*, 1815, promised to pay *Maria's* share, may not be entitled to costs, either from the plaintiff, or from the fund, I shall reserve until the coming in of the report.

The following decree was entered:

"The cause having been heard upon the pleadings and proofs, &c.: it is declared, that the defendants, *Maria Burhanse* and *Catharine Harrett*, are each entitled, as sisters of the half blood of the intestate, *Anthony Dumond*, deceased, to an equal undivided third part of the personal estate of the said intestate, after payment of debts, and the legal charges of the administration, and such costs of this suit, if any, which

*Decree.*

the Court may hereafter direct; and that the defendant, *Anthony Harrett*, is entitled to ask, demand, and receive, by virtue of a power of attorney, for that purpose given him by the said *Catharine Harrett*, (and who is the widow and survivor of *Thomas Harrett*, deceased,) the share aforesaid, belonging to his mother, the said *Catharine*, after the same shall have been ascertained, as hereinafter mentioned, on his giving the security hereinafter mentioned, and subject as aforesaid : And inasmuch as the defendant, *John Burhanse*, has lived separate and apart from the said *Maria*, his wife, and by his improper conduct compelled her to leave him, in the year 1792, and has not contributed to her support and maintenance, nor to the support and maintenance of his children by her, since that period ; and inasmuch as he has, for upwards of sixteen years past, lived in adultery with another woman, under the assumed character of her husband, knowing his lawful wife, the said *Maria*, to be living : it is thereupon further declared, that the undivided third part of the personal estate of the said intestate, which came to the said *Maria Burhanse*, by descent, in the year 1814, is, under the circumstances of the case, to be adjudged and taken as her separate estate, free from the disposition, control, or debts of her said husband, and that all his assignments and releases thereof, are inoperative and void. And it is *ordered, adjudged*, and *decreed*, that it be referred to one of the Masters of this Court residing in the counties of *Albany, Columbia, Dutchess*, or *New-York*, (unless the solicitors or counsel of the parties shall agree on a Master residing elsewhere,) to take and state an account of the personal estate belonging to *Anthony Dumond*, deceased, and which has come to the hands or possession of his administrators, or either of them, or to the hands or possession of any other person, for their use and behalf, or for the use or behalf of either of them ; and that he, also, inquire and report the situation, disposition, use or employment of the said es-

tate, or any part thereof, in the hands of the plaintiff, since the first day of *December*, in the year 1815; and that he have power to examine, upon oath, the plaintiff, or any person not already examined, in respect to the premises, and that he report with all convenient speed. And it is further *ordered*, that the question, whether the plaintiff ought to pay interest on the share belonging to the said *Catharine Harrett*, and the costs of this suit, incurred by the defendants, *Anthony* and *Catharine Harrett*, or either of them, be reserved until the coming in of the report. And it is further *ordered*, that upon the coming in and confirmation of the said report, and after the net amount of the said shares, subject as aforesaid, shall have been established, the plaintiff, on the offer of the security hereinafter mentioned, pay to the said *Anthony Harrett*, the net amount of the share of the said personal estate belonging to his mother, the said *Catharine Harrett*, and that he, also, bring into Court and pay to the register, the net amount of the share of the said personal estate belonging to the said *Maria Burhanse*, and that the register place the same at interest, by investing it in the public funds, or loaning it on adequate real security, as shall hereafter be deemed best, and that the interest thereof, as the same shall from time to time be received, be paid, until further order to the contrary, to the defendant *Maria Burhanse*, for her separate support and maintenance, and that the principal of such share or fund, after her death, be paid over to her two children by the defendant *John Burhanse*, in equal proportions, or to their lawful representatives. *And* it is further *ordered*, that the question, whether the plaintiff be entitled to the costs of this suit, as respects the defendants, *Samuel Magee, Maria Burhanse, John Burhanse*, and *Jabez D. Hammond*, out of the said fund or share, belonging to the said *Maria Burhanse*, be reserved, until the coming in of the said report, and that no costs of this suit be allowed to the defendants *Samuel Magee*

and *John Burhanse*, as against the plaintiff, and that the bill as to them shall stand dismissed without costs; and that the question, whether costs be allowed to the defendant *Hammond*, as against the plaintiff, or the share of the said *Maria*, be reserved. And it is further *ordered*, that the defendant, *Anthony Harrett*, at the time of payment to him by the plaintiff, of the share of his mother, *Catharine Harrett*, give a bond to the plaintiff in double the sum of such share, with two sufficient sureties to be approved of by one of the Masters of this Court, conditioned, that if any debts owing by the said intestate, shall afterwards be recovered or duly made to appear, and which there shall not be other assets to pay, that then the said *Catharine Harrett*, shall refund the share so paid, or such rateable part or proportion thereof, with the other representatives of the intestate, as may be necessary for the payment of the said debts, and the costs and charges duly incurred by reason thereof; and that before the share belonging to the defendant *Maria Burhanse*, be paid into Court, two persons on her behalf, to be approved of as aforesaid, shall give a like bond to the plaintiff."