PATTON (NICHOLSON v.). See Case No. 10,250.

PATTON (PIERCE v.). See Case No. 11,145.

---

## Case No. 10,837.

### PATTON et al. v. The RANDOLPH.

[Gilp. 457.] [1]

District Court, E. D. Pennsylvania. July 23, 1834.

BOTTOMRY — WHEN AUTHORIZED — NECESSITY — PRESENCE OF OWNER — FUNDS — LIEN ON CO-OWNER'S SHARE IN FAVOR OF ANOTHER CO-OWNER.

1. A case of necessity alone authorizes a master to pledge his vessel by giving a bottomry bond.

[Cited in Gibbs v. The Texas, Case No. 5,385; Greely v. Smith, Id. 5,750.]

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Henry D. Gilpin, Esq.]

2. The master cannot pledge a vessel by giving a bottomry bond for money borrowed for repairs, when the owners of the vessel are present at the place where the repairs are made, or when he has funds of the owners, which he has not used, for the purpose.

[Cited in Gibbs v. The Texas, Case No. 5,385; Joy v. Allen, Id. 7,552; The Panama, Id. 10,703.]

3. One part owner cannot take from the master a bottomry bond on the share of another part owner, for repairs done to the vessel.

4. It seems to be the better opinion, that one part owner of a vessel has not a lien on the share of another part owner, for a balance which may be due to him.

[Cited in Macy v. De Wolf, Case No. 8,933; The Larch, Id. 8,085; The Jennie B. Gilkey, 20 Fed. 161; The Daniel Kaine, 35 Fed. 787.]

[This was a libel by William Patton and Samuel D. Dickson against the schooner Randolph, to enforce a bottomry bond.]

J. R. Ingersoll, for libellants.
C. Gilpin, for respondents.

HOPKINSON, District Judge. There seems to be no question about the material facts of this case. The vessel sailed from Philadelphia, bound to Charleston; the respondents, Sloan and Morris, being the owners of one-fourth part of her. At Charleston certain repairs were required, and were made and paid for by moneys advanced by the libellants, Patton and Dickson, to whom the captain gave a bottomry bond, on the one-fourth part of the schooner belonging to Sloan and Morris, to secure the repayment of their advances. The libellants were then in Charleston, and part owners of the vessel, the captain himself being the other part owner. Various grounds of defence against this bond have been taken and insisted upon on the part of the respondents. In the first place, it appears that, prior to the execution of the bond, Sloan and Morris had made an assignment of their share and interest in this schooner to assignees for the benefit of their general creditors, and that this assignment was known to captain Doyle, as well as to the libellants, the obligees in the bond, before the execution of the bond; but the assignment was subsequent to the making of the repairs for which the money was advanced. I pass by the question, whether the assignment or the bond should be preferred in such a case.

A second question has been raised. Can a part owner take a bottomry bond on the share of another owner, for repairs done to the vessel? It is to be recollected that the bond and pledge or hypothecation of the vessel are given by the captain, to raise money, by borrowing, for the outfit of the vessel, in order that she may prosecute her voyage. It is an extraordinary power over the property of another, and strictly confined to the cases of necessity which authorize it. But of whom, in this case, did the captain borrow the money he wanted? Of the very persons who were themselves personally responsible for the whole debt. He borrowed money from Patton and Dickson to pay the debts of Patton and Dickson. This is, at least, a novelty. It is difficult to reject the suggestion, that it was a device got up by the captain and the libellants, after they heard of the failure and assignment of their co-partners, Sloan and Morris, to appropriate to themselves their share of the schooner, in order to indemnify them for the share of Sloan and Morris, in the advances made for the repairs at Charleston. They, therefore, became lenders to the captain to pay their own debts, contracted for the repairs of their own vessel.

Two objections to the bond, as an hypothecation of the schooner, remain; either of which, in my opinion, is sufficient to destroy its validity.

The first objection is, that, at the time the money was borrowed, if it can be so considered, and the bond given, two of the owners, besides the captain himself, were actually in Charleston, where the repairs were made and the debts contracted; in fact, the owners of three-fourths of the schooner were present. Can the captain of a vessel pledge her for money borrowed for her repairs in such a case? If the captain, instead of getting this money from his owners, or of applying to them for funds, had borrowed it from strangers, in their presence, and pledged their vessel for its repayment, would they have deemed it a valid act; would they have submitted to such an exercise of power over their property? His power is not altered or enlarged because he resorted to them for the money, pledging to them the interest of an absent owner. In the presence of the owner of a vessel, on whose personal credit it is presumed the money necessary for the prosecution of a voyage may be obtained, the case of necessity does not exist which alone authorizes a captain to assume a power, not belonging to his ordinary duties or authority, to pledge his vessel. I consider, then, the residence or presence of some of the owners of this schooner, at the place where the repairs were made, and the money taken up, as sufficient to destroy the validity of this bond, as an instrument without authority.

The other objection is equally fatal to it, and on the same general ground, that is, the absence of that necessity, which alone confers the power on the captain to execute such a bond. Sloan and Morris, whose share in the schooner is hypothecated, sent out in her, as their own separate property, seventy-nine barrels of flour, which was sold at Charleston by the captain for five dollars and seventy-five cents per barrel. He got a note from the purchaser, which he had discounted on the 12th February, and received thereon four hundred and twelve dollars;

more than the share of Sloan and Morris of the advances made for repairs; more than the sum for which their part of the schooner was hypothecated. The bond is dated on the 15th of March, 1834, a little more than a month after these funds came into the captain's hands, and after the repairs had been made; so that after these debts for repairs were contracted, the captain actually had in his hands money enough to pay for them, or at least for the portion chargeable to the respondents. Why did he not so apply it? He says he disposed of these funds in the purchase of their paper, which was then good, but admits that he had no instructions from Sloan and Morris to apply them in this way. Can the master of a vessel dispose of his owner's funds, at his own pleasure, and thus create a necessity which is to give him an authority to hypothecate their vessel? I apprehend not. We are here again compelled to see that the execution of this bond did not arise out of any necessity to procure money to pay for the repairs of the vessel, and get her out of the hands of those who had furnished the materials and done the work of her repairs; but it was an expedient to secure to the owners at Charleston, who had paid for the whole, a reimbursement of the one-fourth part chargeable to Sloan and Morris, and to get it from their general creditors, to whom an assignment had been made of their interest in this schooner. I do not say there was any thing unfair in making the experiment, but I think the law will not sanction it.

It has been suggested by the counsel of the libellants, that a joint owner has a lien on the share of his co-owner of a vessel for a balance which may be due to him. Opinions on this point have differed, and it appears to me that the better opinion is against this doctrine. I should be disposed to follow the opinion of Lord Eldon in the case of Ex parte Young, 2 Ves. & B. 242, as Chancellor Kent did on this question in the case of Mumford v. Nicoll, 4 Johns. Ch. 522, although a majority of the judges in the New York court of appeals seemed inclined to support the opinion of Lord Hardwicke, in the case of Doddington v. Hallet, 1 Ves. Sr. 497, which was in favour of the lien. If, however, such a lien were admitted to exist, can it be enforced by a libel in the admiralty? Or when a libel has been filed, setting forth a claim founded on a bottomry bond, and on that only, can the libellants, finding themselves unable to sustain that claim, withdraw it, or have it dismissed, and then substitute, in its place, another claim altogether different, and of which the court, originally, could have taken no cognizance? It is wholly unlike the case in which chancery, having jurisdiction of the principal matter, will take it over collateral subjects, although they would not, by themselves, have been liable to it.

Decree: That the libel be dismissed, with costs.